UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RICHARD LEE PAIVA, individually, and on  :
behalf of all others similarly situated,    :
               :
    Plaintiff,       :
               :
   v.         :   C.A. No. 26-338JJM
               :
RHODE ISLAND DEPARTMENT OF   :
CORRECTIONS, et al.,      :
               :
    Defendants.     :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Purporting to act on behalf of a class, *pro se* Plaintiff Richard Lee Paiva, an inmate serving a life sentence in the custody of the Rhode Island Department of Corrections ("RIDOC"), has filed a "Verified Class Action Complaint for Damages, as Well as Declaratory and Injunctive Relief," based on the loss of access to or use of what he alleges is his property, a tablet he purchased and digital media content he purchased and accessed by that device or by an MP3 player that he may or may not still possess. ECF No. 1 at 1-15 (capitals omitted). Plaintiff alleges that RIDOC (and various officials acting individually and officially)[1] changed the vendor for the provision of tablets and digital content to inmates from Keefe Commissary Network, LLC ("Keefe") to Securus Technologies, LLC ("Securus"). Id. Plaintiff contends that this transition has been implemented through a RIDOC order forcing all inmates to surrender their Keefe tablets and chargers, allegedly rendering inaccessible digital media content accessed through the Keefe tablet, without compensation for the lost property or a pre-deprivation hearing. Based on

---

[1] These officials are sued individually for damages and officially for injunctive and declaratory relief. ECF No. 1 ¶ 15.

this contention, Plaintiff claims that Defendants have violated the Takings Clause of the Fifth

Amendment and the procedural Due Process Clause of the Fourteenth Amendment of the United

States Constitution.  Id. at 1-4.  Plaintiff's claims are predicated on 42 U.S.C. § 1983.  Id. ¶ 17.

Plaintiff has filed a motion for leave to proceed *in forma pauperis* ("IFP") rendering his

Complaint subject to screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  The IFP

motion has been referred to me.  I address it via a report and recommendation recommending

dismissal because the Complaint, as pled, fails to state a viable claim, despite Plaintiff's clear

eligibility for IFP status based on his compliant filings establishing indigency.  ECF Nos. 2-3.

Because the deficiencies may be curable, I recommend that Plaintiff be afforded leave to amend

for himself, although not on behalf of other inmates.

## I.      Background

This case presents a circumstance that is familiar to the non-incarcerated – the rapid

advance of technology and available technological platforms resulting in the loss of the ability to

use obsolete purchased property.  However, when this circumstance arises in a state-operated

prison and prisoners are no longer allowed to possess the obsolete property based on the

authority of prisons to regulate what prisoners may possess, courts have considered whether the

circumstance implicates special duties imposed on the State or prison officials by the United

States Constitution arising from the incarcerated individual's ownership of the obsolete property.

Thus, many courts have addressed prisoner claims arising from the inability to possess obsolete

devices that they purchased or to use purchased music, games or other content that has become

inaccessible because of the loss of possession of the device.  E.g., Jackson v. Monfils, No. 25-

CV-1524-JPS, 2026 WL 1297680, at *2-3 (E.D. Wis. May 12, 2026) (prison change of tablet

vendor made purchased songs and games useless; case dismissed at screening for failure to state

claim with leave to replead possible regulatory takings claim); Bibbs v. JPay, LLC, No. 2:23-cv-2792, 2023 WL 7627071, at *4 (S.D. Ohio Nov. 15, 2023) (prison directed that old tablets be traded in for new version or sent home due to provider change, rendering purchased digital content inaccessible; claims *sua sponte* dismissed for failure to state claim); adopted, 2024 WL 514480 (S.D. Ohio Feb. 9, 2024); Golden v. Dixon, No. 4:23cv396-AW-MAF, 2024 WL 4454930, at *4 (N.D. Fla. Mar. 21, 2024) (prison change of tablet vendor implemented by requiring inmates to surrender old tablets; motion to dismiss claims against prison officials granted), adopted, 2024 WL 4307195 (N.D. Fla. Sept. 26, 2024); Dell v. Smith, No. 2:23-cv-3167, 2023 WL 8747358, at *2 (S.D. Ohio Dec. 19, 2023) (due to vendor transition impacting tablets, inmates unable to access purchased video games; claims dismissed at screening with prejudice), adopted by order sub nom. Dell v. Chambers-Smith, 2024 U.S. Dist. LEXIS 31337 (S.D. Ohio Feb. 23, 2024); see generally Amber M. Banks, Please Don't Stop the Music: Using the Takings Clause to Protect Inmates' Digital Music, 22 VAND. J. ENT. & TECH. L. 121 (2019).

In the specific circumstances limned by the Complaint, since 2016, RIDOC permitted inmates to purchase MP3 players and, since 2019, to purchase tablets, with related digital content, exclusively from Keefe. ECF No. 1 ¶¶ 4, 29, 30. In making those sales, the Complaint alleges that both RIDOC and Keefe "explicitly promised that inmates would own their media players and digital media files they purchased from Keefe forever." Id. ¶¶ 4, 29. In 2022, Keefe stopped offering MP3 players and tablets for sale but RIDOC began to supply Keefe tablets at no cost to inmates, provided that inmates who had purchased Keefe devices were permitted to keep them. Id. ¶ 31. For the items and content sold, Keefe charged inmates and RIDOC earned commissions on the sales, resulting in substantial income for the State. Id. ¶ 4.

3

Pursuant to this program, Plaintiff purchased a Keefe MP3 player in 2017 and a Keefe tablet in 2019, as well as multiple chargers and more than 500 digital media files to play on these devices.  Id. ¶¶ 51-54.  In all he spent more than $1,200.  Id. ¶¶ 4, 54.

In 2024, RIDOC decided to enter a contract with Securus to take over the inmate tablet program from Keefe "in the near future."  Id. ¶ 32.  In June 2025, RIDOC issued an "Order" providing for a facility-by-facility rollout, requiring the surrender of the Keefe tablets (both those that had been purchased and those provided to inmates at no cost) and chargers.  Id. ¶ 33.  As a result, the Complaint alleges that "access and control over [inmates'] digital media files were effectively taken by the Defendants."  Id.; see also id. ¶¶ 34-35.  Nevertheless, as the Complaint alleges, RIDOC was aware "that there would be issues if the inmates' previously purchased digital media content could not be transferred from their Keefe tablets to the new Securus tablets," as well as that, as of the date of the Complaint, "RIDOC has not yet decided what its inmates will be permitted to do with their purchased Keefe tablets and chargers."  Id. ¶¶ 40, 45.  Despite this uncertainty regarding RIDOC's final decision, the Complaint includes the conclusory allegation that "it is clear that inmates will not be permitted to access any of their digital media files purchased from Keefe during the remainder of their incarceration."  Id. ¶ 45.

In August 2025, Defendant Corry posted a memorandum in the facility where Plaintiff was then incarcerated.  Id. ¶ 55; see ECF No. 1-1.  Titled as "Maximum Security tablet updates," the memorandum advises that all inmates would soon be given a Securus tablet, with a charging cable and headphone set, and access to free services, as well as the option to purchase a subscription for premium content.  ECF No. 1-1.  The memorandum noted that the new Securus system has a cloud-based server and permits the download of up to thirty-two GB of data.  Id.  Among other features, the Securus tablet has apps, messaging and phone services.  Id.  With this

4

rollout, the memorandum states that Keefe tablets and charging cables must be "turned in" and "are being securely stored to address cloud/proprietary issues previously outlined by the Director's office.  They will be securely stored until that matter has been resolved."  Id.

The Complaint does not allege that any of Plaintiff's property was taken for a "public use."  The Complaint does not allege that the digital media content Plaintiff purchased from Keefe is being taken but rather that access to it inside RIDOC facilities will be effectively gone once the Keefe tablet is surrendered.  The Complaint affirmatively concedes that RIDOC has made no final decision about how to address the problem of purchased Keefe devices or regarding "cloud/proprietary issues."  ECF No. 1.  The Complaint does not allege that either the June 2025 Order or the August 2025 memorandum required the surrender of Plaintiff's purchased Keefe MP3 player or impacted the use of any purchased content stored on or accessed by that device.  And, of the five RIDOC officials sued individually, only one – Defendant Corry – is alleged to have engaged in an action or omission that caused the alleged constitutional deprivations.  ECF No. 1 ¶ 55.

As remedies, Plaintiff asks the Court to declare that these actions violate the Takings Clause and the Due Process Clause; he alternatively seeks either an injunction restoring possession and ownership of his Keefe tablet and the purchased digital media files he accessed with it or compensation for the costs he expended to purchase them.  ECF No. 1 at 20-21.

## II.   Standard of Review

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the standard used when ruling on a Fed. R. Civ. P. 12(b)(6) motion.  Chase v. Chafee, No. CA 11-586 ML, 2011 WL 6826504, at *2 (D.R.I. Dec. 9, 2011), adopted, 2011 WL 6826629 (D.R.I. Dec. 28, 2011).  That is, "[t]o state a claim on which relief may be granted,

5

the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted). In making this determination, the Court must accept a plaintiff's well-pled factual allegations as true and construe them in the light most favorable to him. Id. However, although the Court must review pleadings of a *pro se* plaintiff liberally, Instituto de Educacion Universal Corp. v. United States Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000), the Court need not credit bald assertions or unverifiable conclusions, Chase, 2011 WL 6826504, at *2. "[M]ere conclusory statements[] do not suffice" to render a pleading plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, it is a pleading's factual content that "nudg[es] [the] claims . . . across the line from conceivable to plausible." Id. at 680 (internal quotation marks omitted).

### III.    Analysis and Recommendations

#### A.    Class Claims on Behalf of Other Inmates

As a *pro se* litigant, Plaintiff is barred by DRI Local Rule 205(a)(2) from "represent[ing] any other party." Silva v. Rhode Island, C.A. No. 19-568JJM, 2021 WL 3617103, at *1 (D.R.I. Aug. 16, 2021) (alteration in original) (internal quotation marks omitted), adopted by text order (D.R.I. Sept. 16, 2021); see Young v. Wall, 228 F.R.D. 411, 412 (D.R.I. 2005) ("Individuals appearing *pro se* may not adequately represent and protect the interests of a class"). This principle is consistent with the applicable federal statute. See 28 U.S.C. § 1654 ("[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein"); Nickerson v. Providence Plantation, C.A. No. 19-00030-WES, 2019 WL 720703, at *4 (D.R.I. Feb. 20, 2019) ("[i]ndividuals appearing *pro se* cannot adequately represent and protect the interests of a Rule 23 class"), adopted by text order (D.R.I. Nov. 19, 2019). This principle

6

has been applied in the context of a tablet transition by a state agency operating a prison.  Dell, 2023 WL 8747358, at *2-3, *5 (inmate's takings claim based on phase out of tablet and inability to play purchased video games limited to alleged violations of his own rights).  Based on this principle, I recommend that all of Plaintiff's class allegations be stricken and all of the factual allegations and legal claims made on behalf of putative class members (other than those on behalf of Plaintiff himself) be dismissed without prejudice.

### B.  Takings Clause Claim

The Takings Clause of the Fifth Amendment (as incorporated by the Fourteenth Amendment) prohibits state officials from taking "private property"[2] for public use "without just compensation."  U.S. Const. amend. V; see Golden, 2024 WL 4454930, at *5 (state may confiscate private property in compliance with Fifth Amendment) (citing Brown v. Legal Found. of Washington, 538 U.S. 216, 231-32 (2003)).  The Takings Clause applies to two types of governmental action.  Clemente Props., Inc. v. Pierluisi-Urrutia, 165 F.4th 1, 31 (1st Cir. 2026), cert. pet. docketed No. 25-1426 (U.S. June 29, 2026).  First is a taking by the government of physical possession or control of an interest in property for some public purpose; and second, a regulatory taking caused by regulations prohibiting private use of property.  Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302, 321-23 (2002).

To the extent that Plaintiff's Complaint purports to allege the physical removal of his property (mandated surrender of his purchased Keefe tablet and charger), it fails to state a Takings Clause claim because Plaintiff does not allege that his property was taken for public use.

---

[2] Because the Court's inquiry is simply to screen the Complaint, I assume without deciding that Plaintiff's takings claim is based on the alleged loss of "private property" to which he has the right of possession and use while in prison.  But see Young v. Wall, 642 F.3d 49, 51-52, 55 (1st Cir. 2011) (prisoners have no property right in use of money in inmate accounts to earn interest; "forward-looking change in policy and practice did not deprive the plaintiff of any constitutionally protected property right"); Golden, 2024 WL 4454930, at *6 ("state prison system lawfully may declare what property is permissible to possess and what property is not permissible").

See Jackson, 2026 WL 1297680, at *2 (Takings Clause claim based on physical substitution of tablets fails because no allegation that property was taken for public use); see, e.g., Golden, 2024 WL 4454930, at *5-6 (because surrender of plaintiff's tablet was not for a "public use," it is not a "taking" in violation of Constitution); Bibbs, 2023 WL 7627071, at *4 (dismissal of takings claim at screening due to lack of any allegation plausibly suggesting that tablets or digital content taken for a public use, particularly where tablets were to be traded in or sent home due to a change in policy and service/media provider); Byrd v. Washington, No. 1:20-cv-176, 2021 WL 1200732, at *5-6 (W.D. Mich. Mar. 1, 2021) (inmate's Takings Clause claim dismissed because no allegation that prison officials took MP3 player for public use), adopted, 2021 WL 1195732 (W.D. Mich. Mar. 30, 2021).

Doubtless in recognition of this deficiency, Plaintiff alleges that he is asserting only a regulatory taking, ECF No. 1 ¶ 68, which occurs "where [the challenged] regulation denies all economically beneficial or productive use" of the plaintiff's property. Clemente Props., Inc., 165 at 31 (alteration in original) (internal quotation marks omitted). To assess the propriety of a regulatory taking claim as applied to Plaintiff's alleged loss of use of purchased digital content, the Court must apply a nuanced, three-pronged inquiry into "(1) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations; (2) the regulation's economic impact on the property owner; and (3) the character of the government action." Maine Educ. Ass'n Benefits Tr. v. Cioppa, 695 F.3d 145, 153 (1st Cir. 2012). An essential element of a regulatory takings claim is the existence of a final decision as to "the application of the regulations to the property." Marek v. Rhode Island, 702 F.3d 650, 653 (1st

8

Cir. 2012) (internal quotation marks omitted)[3]; see Pakdel v. City & Cnty. of San Francisco, California, 594 U.S. 474, 480 (2021) (per curiam) (while administrative exhaustion is not required, regulatory takings claim is not ripe until "the government has adopted its final position").

Apart from other potential deficiencies,[4] Plaintiff's regulatory takings claim is not plausible because he does not satisfy the ripeness requirement articulated in Marek and confirmed by the Supreme Court in Pakdel.[5]  That is, Plaintiff fails to allege the existence of a final RIDOC decision denying him of any beneficial use of his digital material.  To the contrary, the August 2025 memorandum attached to the pleading specifies that inmates will receive new tablets without charge to include "free services" (potentially replicating or rendering accessible

---

[3] The cited aspect of the holding in Marek was not impacted by the Supreme Court's subsequent overruling of Williamson County v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985), in Knick v. Twp. of Scott, Pennsylvania, 588 U.S. (2019).

[4] For example, Plaintiff's investment backed expectation may be cabined by the authority of prisons to regulate what private property inmates may possess, while the economic impact and character of the government action may not fit the regulatory taking paradigm where RIDOC is replacing the purchased Keefe tablets with new tablets, chargers and free services.  See Maryland Shall Issue, Inc. v. Hogan, 963 F.3d 356, 365 (4th Cir. 2020) ("in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, he ought to be aware of the possibility that new regulation might even render his property economically worthless") (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1027-28 (1992)); McCutchen v. United States, 145 Fed. Cl. 42, 56 (2019) (regulation criminalizing possession of bump stocks is not regulatory taking because claimants "could not have reasonably expected that existing rules regarding bump-stock devices would not be made more restrictive"), aff'd on other grounds, 14 F.4th 1355 (Fed. Cir. 2021).

[5] As of this writing, the Court has found almost no decisions potentially supportive of Plaintiff's takings claim.  One exception is in Wisconsin where, by downplaying the finality requirement for a regulatory taking, one district court found that the implementation of a change of tablet vendor for Wisconsin's prisons that resulted in loss of access to purchased digital content was sufficient potentially to state a regulatory taking claim as to the digital content.  Huber v. Hoy, 24-cv-404-wmc, 2025 WL 1344757, at *3-4 (W.D. Wisc. May 8, 2025) (prison policy impacting use of previously purchased digital media "sufficient at this early stage" to state claim of regulatory taking).  Another decision from Wisconsin followed Huber to reach a similar conclusion.  Jackson, 2026 WL 1297680, at *2.  Other courts disagree.  E.g., Luginbyhl v. Lawton Corr. Rehab. Ctr., No. CIV-23-937-JD, 2024 WL 6044005, at *9 (W.D. Okla. June 11, 2024) (dismissing Takings Clause based in part on loss of use of digital music downloads), adopted as modified, 2025 WL 3083088 (W.D. Okla. Nov. 4, 2025); Wallace v. Fla. Dep't of Corr., No. 24-cv-14094 ALTMAN, 2024 WL 1513463, at *2 (S.D. Fla. Apr. 8, 2024) (dismissing Takings Clause claim based on inmate's loss of tablet resulting in inability to "get[] his money back that payed for . . . music"); Dell, 2023 WL 8747358, at *2, 5 (prison mandate causing inmates to lose $1,000 investment in video games used on surrendered tablet fails at screening to state Takings Clause claim).

9

the previously purchased digital content); that RIDOC has informed Plaintiff that the Keefe tablets "are being securely stored to address cloud/proprietary issues previously outlined by the Director's office"; and that "[the Keefe tablets] will be securely stored until that matter has been resolved." ECF No. 1-1 (emphasis added). Further, there is no allegation that Plaintiff's purchased MP3 player has been required to be surrendered; thus, there can be no regulatory takings claim for digital content that it could be used to access. Most importantly, the Complaint specifically notes that RIDOC is aware "that there would be issues if the inmates['] previously purchased digital media content could not be transferred from their Keefe tablets to the new Securus tablets" and it "has not yet decided what its inmates will be permitted to do with their purchased Keefe tablets and chargers in RIDOC's custody." ECF No. 1 ¶¶ 40, 45. This deficiency is not cured by Plaintiff's conclusory allegation (with no facts to render it plausible) that "it is clear that inmates will not be permitted to access any of their digital media files purchased from Keefe during the remainder of their incarceration at the ACI." Id. ¶ 45. Thus, on the face of the pleading, it is plain that RIDOC is trying to solve the very problem alleged by Plaintiff and it remains unknown whether its final action will deprive inmates of all use of previously purchased digital content. Accordingly, Plaintiff's categorical regulatory takings claim based on his alleged loss of access to previously purchased digital content fails because it is not ripe. See Clemente Props., 165 F.4th at 31-32.

For these reasons, I find that the Complaint fails to state a claim based on a physical taking for a public use and fails to state a claim based on a regulatory taking that is ripe to be asserted in federal court. Accordingly, I recommend that Plaintiff's Takings Clause claim be dismissed without prejudice and with leave to file an amended pleading.[6]

---

[6] To the extent that Plaintiff accepts the Court's invitation to file an amended pleading, he should be mindful that the Takings Clause may not support equitable relief such as an injunction, as well as that his RIDOC/official capacity

### C.    Procedural Due Process

The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  However, the requirement of procedural due process is generally satisfied so long as "a meaningful postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Inmate grievance procedures can be an adequate post-deprivation remedy.[7]  Id. at 536 n.15; Paiva v. Coyne-Fague, No. 21-1746, 2022 WL 2915696, at *2 (1st Cir. July 25, 2022) ("[t]he existence of the state [grievance] remedy defeats any claim [inmate plaintiff] has that he was deprived of property without due process") (first alteration in original).  That is, there is no procedural due process violation as long as state law provides for meaningful post-deprivation remedies for the illegal loss of property.  Luginbyhl, 2024 WL 6044005, at *10.  As one court has held in the context of a state prison's policy phasing out one vendor's tablets and substituting those of a new vendor (resulting in the loss of use of purchased digital content), procedural due process is satisfied by adequate state remedies and a procedural due process claim asserted pursuant to § 1983 is subject to dismissal unless the pleading plausibly alleges "the inadequacy of state or administrative processes and remedies," such as state tort remedies for conversion.  Dell, 2023 WL 8747358, at *4 (internal quotation marks omitted); see, e.g., Jackson, 2026 WL 1297680, at *2 (plaintiff cannot proceed on procedural due process claim based on inability to use tablet and related songs and games because he had remedies under state law and he failed plausibly to allege that post-deprivation statutory remedies are inadequate); Bibbs, 2023 WL

---

claims for compensation may be barred by the Eleventh Amendment.  See Byrd, 2021 WL 1200732, at *5-6. Further, his amended complaint should plausibly plead how his claim for just compensation under the Takings Clause is appropriately asserted against the five Defendants who are named in their individual capacity.

[7] The pleading mentions that grievances have been filed and complaints have been made by other inmates, ECF No. 1 ¶ 49, but not by Plaintiff.

11

7627071, at *4 (despite change in prison policy resulting in loss of tablet and digital content, plaintiff "may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress [his] due process violations") (alteration in original) (internal quotation marks omitted); Williams v. Price, No. 1:18-cv-00102-NONE-SAB (PC), 2020 WL 4350089, at *17 (E.D. Cal. July 29, 2020) (where inmate had notice of prison regulation that made internet enabled devices contraband, his procedural due process claim fails so long as state provided adequate post-deprivation remedy), adopted, 2020 WL 5891453 (E.D. Cal. Oct. 5, 2020).  Because Plaintiff's Complaint fails to plausibly assert that available post-deprivation remedies (such as a grievance or state tort remedies) are inadequate, his procedural Due Process Clause claim must be dismissed.  See Nieves v. Allison, No. 1:22-cv-01020-ADA-CDB (PC), 2023 WL 5956981, at *5 (E.D. Cal. Sept. 13, 2023) (listing cases holding that neither substantive nor procedural due process is offended by adoption of prison policy that previously purchased tablets and music may no longer be possessed by prisoners), adopted, No. 1:21-cv-01020-KES-CDB (PC), 2024 WL 4894575 (E.D. Cal. Nov. 26, 2024).

Plaintiff's procedural due process challenge also fails because it is leveled at RIDOC's adoption of a noticed-well-in-advance "class-wide policy determination, as opposed to an individual determination of eligibility."  Young v. Wall, C.A. No. 07-034 S, 2010 WL 2541053, at *4 (D.R.I. Jan. 28, 2010) (internal quotation marks omitted), adopted, 2010 WL 2553572 (D.R.I. June 18, 2010), aff'd, 642 F.3d 49 (1st Cir. 2011).  In that circumstance, the procedural Due Process Clause does not require individualized notices or hearings for each affected person. Id.  To illustrate, in one case, consistent with their authority to regulate what property inmates can possess, prison officials gave advance notice of the adoption of a prison-wide policy that

12

inmates may no longer possess typewriters that they own.  Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011).  The court held that this regulation did not transgress inmates' procedural due process rights despite the lack of individual pre-deprivation hearings: "[w]ith respect to the personal property of prisoners, [advance notice of the policy with an adequate opportunity to comply] is all the process that is due." Id.  Because the Complaint alleges only that RIDOC provided ample advance notice of the adoption of an across-the-board policy that all Keefe tablets and chargers owned by inmates may no longer be possessed by inmates in RIDOC facilities, while supplying each inmate (without charge) with a new tablet, charger and access to free services, it fails to state a plausible procedural due process claim.

Based on the foregoing, I recommend that Plaintiff's procedural Due Process Clause claim be dismissed, albeit without prejudice and with leave to replead.[8]

IV.    **Conclusion**

Based on the foregoing, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), I recommend that Plaintiff's class allegations be stricken and claims on behalf of a putative class be dismissed because Plaintiff lacks the capacity to prosecute them as a *pro se* litigant.  I further recommend that Plaintiff's Takings Clause and procedural Due Process Clause claims are subject to dismissal for failure to state a claim, provided that the Court should first allow Plaintiff to file an amended complaint within thirty days of the issuance of this report and recommendation to address the identified deficiencies.  If the amended complaint is adequate to survive screening,

---

[8] Because I find Plaintiff's procedural due process claim fails for the reasons stated in the text, I do not address the potentially fatal problem with the individual liability money damage claims against four of the five named RIDOC officials arising from the absence of any allegations that they acted or omitted to act resulting in a constitutional deprivation.  See Silva v. Clarke, C.A. No. 19-568JJM, 2022 WL 1091336, at *13 (D.R.I. Apr. 12, 2022) (individual's § 1983 damage liability must be premised on official's own acts or omissions), adopted by text order (D.R.I. May 2, 2022).

the IFP motion should be granted.  Otherwise, I recommend that these claims be dismissed without prejudice and the IFP motion be denied.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 14, 2026